**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LOREM VASCULAR, Pte. Ltd., a Singapore Company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 21-00885-MN |
| PLUS THERAPEUTICS, INC. f/k/a CYTORI THERAPEUTICS, INC., a Delaware corporation; and DOES 1 through 30, inclusive, | ) |
| | ) |
| Defendants. | ) |

**LOREM VASCULAR, PTE. LTD.'S ANSWERING BRIEF IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

OF COUNSEL:

Travis J. Anderson
James V. Fazio
Jenna G. Crawford
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130
(858) 720-8900

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff*

Dated:  September 9, 2021

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF ARGUMENT .............................................................................2

III.    LEGAL STANDARD GOVERNING RULE 12(B)(6) MOTIONS .....................2

IV.     ARGUMENT ..........................................................................................................3

        A.      Lorem Has Adequately Stated a Claim for Breach of Contract.................3

                1.      The Plain Language of the APA is Susceptible to More than One
                        Meaning ..........................................................................................3

                2.      Lorem Has Adequately Stated a Claim for Breach of Plus's Specific
                        Representations and Warranties......................................................5

        B.      Lorem Has Adequately Stated a Claim for Breach of the Implied Covenant
                of Good Faith and Fair Dealing ...............................................................10

        C.      Lorem Has Stated a Claim for Fraudulent Inducement ...........................12

                1.      Lorem Has Pleaded Plus's False Statements with Particularity ......12

                2.      Lorem's Fraudulent Inducement Claim is Distinct from its Breach
                        of Contract Claim..........................................................................14

                3.      Lorem Has Adequately Pleaded Justifiable Reliance .....................16

        D.      Lorem Has Sufficiently Alleged a Claim for Negligent Misrepresentation .........19

V.      CONCLUSION......................................................................................................20

TABLE OF AUTHORITIES

Page(s)

Cases

*Abry Partners V, L.P. v. F & W Acquisition LLC*
891 A.2d 1032 (Del. Ch. 2006)...........................................................................17

*Allied Capital Corp. v. GC-Sun Hldgs., L.P.*
910 A.2d 1020 (Del. Ch. 2006)...................................................................5, 7, 9, 10

*Alltrista Plastics, LLC v. Rockline Inds., Inc*.
2013 WL 5210255 (Del. Sup. Ct. Sep. 4, 2013)...............................................10, 11

*Anschutz Corp. v. Brown Robin Capital, LLC*
No. 2019-0710-JRS, 2020 WL 3096744 (Del. Ch. Jun. 11, 2020) .....3, 4, 5, 6, 7, 9, 10, 14, 17

*AT&T Corp. v. Lillis*
953 A.2d 241 (Del. 2008) ..........................................................................5, 6, 7, 10

*Coca-Cola Bottling Co. v. Coca-Cola Co*.
769 F. Supp. 671 (D. Del. 1991)..............................................................................3

*Cornell Glasgow, LLC v. La Grange Props., LLC*
No. 11 Civ.05-016 (JRS), 2012 WL 2106945 (Del. Super. Ct. June 6, 2012) .......................15

*Davis v. 24 Hour Fitness Worldwide, Inc.*
75 F. Supp. 3d 635 (D. Del. 2014).........................................................................18

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*
No. 16 Civ. 07-080 (PRW), 2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017)..................16

*FinancialApps, LLC v. Envestnet, Inc.*
No. CV 19-1337-CFC-CJB, 2020 WL 4569466 (D. Del. July 30, 2020) *rep. & rec.*
*adopted*, No. CV 19-1337-CFC/CJB, 2020 WL 5552456 (D. Del. Sept. 15, 2020) ..............16

*Frazier v. Am. Airlines, Inc.*
No. 03-Civ. 734 JJF, 2004 WL 2223298 (D. Del. Sept. 30, 2004)........................................15

*Heritage Handoff Holdings, LLC v. Fontanella*
No. 1:16-cv-00694-RGA, 2019 WL 1056270 (D. Del. Mar. 6, 2019) ....................................17

*Hiller & Arban, LLC v. Reserves Mgmt., LLC*
No. CV N15C-02-161 WCC, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016) .........15

*Keystone v. Barclays Bank PLC*
No. 19 Civ. 796 (MN), 2020 WL 109008 (D. Del. Jan. 9, 2020)...........................................20

ii

*Kircher v. Wyndham Vacation Resorts, Inc.*
    No. CV 20-436-CFC, 2021 WL 1198314 (D. Del. Mar. 30, 2021)........................................14

*Lorem Vascular, Pty. Ltd. v. Cytori Therapeutics, Inc.*
    2018 WL 3388096 (S.D. Cal. Jul. 11, 2018) ............................................................................12

*LVI Grp. Inv., LLC v. NCM Grp. Holdings, LLC*
    No. 12067-VCG, 2017 WL 1174438 (Del. Ch. Mar. 29, 2017)................................................12

*McDonald's Corp. v. Easterbrook*
    No. 2020-0658-JRS, 2021 WL 351967 (Del. Ch. Feb. 2, 2021) .............................................18

*Mentis v. Delaware Am. Life Ins. Co.*
    1999 WL 744430 (Del. Super. July 28, 1999).......................................................................19

*Osram Sylvania Inc. v. Townsend Ventures, LLC*
    No. 8123-VCP, 2013 WL 6199554 (Del. Ch. Nov. 19, 2013) ................................................15

*Prairie Cap. III, L.P. v. Double E Holding Corp.*
    132 A.3d 35 (Del. Ch. 2015)..............................................................................................13, 17

*Red Mtn. Holdings, Ltd. v. Stout P'ship*
    No. 00 Civ. 190(JJF), 2001 WL 34368400 (D. Del. Mar. 30, 2001).......................................15

*REI Holdings, LLC v. LienClear-0001, LLC*
    2019 WL 3546881 (D. Del. Aug. 5, 2019) ...............................................................................5

*Southern Track & Pump, Inc. v. Terex Corp.*
    623 F. Supp. 2d 558 (D. Del. 2009).......................................................................................11

*In re Student Fin. Corp. v. Royal Indem. Co.*
    2004 WL 609329 (D. Del. Mar. 23, 2004) .......................................................................19, 20

*Swipe Acquisition Corp. v. Krauss*
    No. 2019-0509-PAF, 2020 WL 5015863 (Del. Ch. Aug. 25, 2020) ...................................14, 15

*Tracinda Corp. v. DaimlerChrysler AG*
    364 F. Supp. 2d 362 (D. Del. 2005), *aff'd*, 502 F.3d 212 (3d Cir. 2007) ..............................18

*TrueBlue, Inc. v. Leeds Equity Partners IV, LP*
    No. N14C-12-112 WCC CCLD, 2015 WL 5968726 (Del. Super. Ct. Sep. 25, 2015)............16

*Truinject Corp. v. Nestlé Skin Health, S.A.*
    2020 WL 70981 (D. Del. Jan. 7, 2020)...................................................................................12

*vMedex, Inc. v. TDS Operating, Inc.*
    2020 WL 4925512 (D. Del. Aug. 21, 2020) ...........................................................................11

*Voterlabs, Inc. v. Ethos Grp. Consulting Servs., LLC*
No. CV 19-524-RGA-SRF, 2020 WL 6131760 (D. Del. Oct. 19, 2020) *rep. & rec. adopted*, 2020 WL 10622570 (D. Del. Dec. 4, 2020).........................................................3, 15

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*
901 A.2d 106 (Del. 2006) ................................................................................................20

Other Authorities

Fed. R. Civ. P.
Rule 9 ................................................................................................................................12
Rule 9(b) .....................................................................................................................12, 14

https://www.global-regulation.com/translation/china/158926/regulations-on-supervision-and-administration-of-medical-devices.html ....................................................................8

Restatement (Second) of Torts § 551 ...........................................................................19

## I.    INTRODUCTION

This case arises from a 2019 Asset and Equity Purchase Agreement ("APA") between Plaintiff Lorem Vascular ("Lorem") and Defendant Plus Therapeutics, formerly known as Cytori Therapeutics ("Plus").    Lorem purchased from Plus a manufacturing facility in the United Kingdom for the purpose of manufacturing EU-certified medical devices, which could then be sold to China.  This transaction did not arise in a vacuum.  Rather, it marked a culmination of repeated business dealings, all of which were premised on Plus's ability to manufacture certified medical devices for Lorem to sell in China and other countries.  Plus knew that its CE certification status was essential to Lorem, and that without the necessary certification, Lorem would not be able to import and sell the products in China, which in turn would render the venture of greatly diminished value to Lorem.    Instead of losing the deal, Plus misled Lorem into believing that its CE certification had merely been temporarily suspended and would be readily reinstated once an overdue audit was completed.

In truth, however, Plus's board had intentionally canceled its CE certificates the year before the APA, which meant that Lorem would be forced to restart a lengthy, costly, and uncertain certification process from scratch.  Plus's false representations induced Lorem to sign the APA without further scrutinizing the certification status or seeking further assurances.  As a result, Plus committed fraudulent inducement, negligent misrepresentation, and breached the numerous express and implied covenants and warranties set forth in the APA regarding the manufacturing facility's ability to conduct business in the U.K., EU, and beyond.  Plus thus induced Lorem to part with millions of dollars to purchase a facility that had virtually no commercial value to it, and which has now forced Lorem to incur millions more in attempting to mitigate the certification problems and find an alternative path to sell these medical products in China.

Plus's motion to dismiss is one more sleight-of-hand attempt.  It flows from the fallacy that

the following APA disclosure was a full and accurate description of Plus's certification status:

> Not in compliance: Last year, the Company was supposed to perform an audit of the UK facility last year.  This has not been done yet.  As a result, Inventory assembled in the UK facility cannot be exported to the UK or EU.

RJN Ex. 1, Disclosure Sch. § 3.10(b).[1]  Even in the light most charitable to Plus, this "disclosure" implies a falsehood: that the only reason inventory cannot be exported is because an audit due the year before "has not been done yet."  But this is the pleading stage, when the allegations and contractual language must be construed in the manner most favorable to Lorem.  When viewed in this or any light, the disclosure is an utterly false statement which Lorem detrimentally relied upon in entering into the deal.  Lorem has thus sufficiently pled specific misrepresentations, contract breaches, detrimental reliance, and damages.  Plus's motion should be denied in its entirety.

## II.    SUMMARY OF ARGUMENT

Lorem's claims are adequately pled because: (1) the breach of contract claim identifies numerous representations and warranties that Plus breached by failing to tender a facility whose CE certification had only been suspended by reason of an overdue audit; (2) the breach of the implied covenant of good faith and fair dealing arises from Lorem's failure to take any steps to rectify the compliance issues post-APA; (3) the fraudulent inducement claim is pled with particularity as to each false representation, the ensuing justifiable reliance, and the distinct harm; and (4) the negligent misrepresentation claim alleges facts giving rise to Plus's duty to fully and accurately disclose that its CE certification had been canceled.

## III.    LEGAL STANDARD GOVERNING 12(B)(6) MOTIONS

To survive a motion to dismiss, "the complaint must set forth sufficient factual matter,

---

[1] Lorem does not oppose Plus's Request for Judicial Notice (D.I. 11) to the extent Plus seeks to establish that the parties entered into the respective contracts.  Lorem otherwise disagrees with Plus's interpretation of those contracts, as detailed herein.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Voterlabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, No. CV 19-524-RGA-SRF, 2020 WL 6131760, at *3 (D. Del. Oct. 19, 2020), *rep. & rec. adopted*, 2020 WL 10622570 (D. Del. Dec. 4, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he court must accept as true all well pleaded factual allegations in the complaint and construe all reasonable inference in favor of the plaintiff." *Id.* Dismissal is only appropriate "if the plaintiff would be unable to recover under 'any reasonably conceivable set of circumstances susceptible of proof' based on facts pled." *Anschutz Corp. v. Brown Robin Capital, LLC*, No. 2019-0710-JRS, 2020 WL 3096744, at *6 (Del. Ch. Jun. 11, 2020) (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006)).

## IV.    ARGUMENT

### A.    Lorem Has Adequately Stated a Claim for Breach of Contract

#### 1.    The Plain Language of the APA is Susceptible to More than One Meaning

Plus argues that the breach of contract claim must be dismissed because the allegedly "plain language" of the APA precludes Lorem's theory of recovery. In particular, Plus argues that because Disclosure Schedule § 3.10(b) states the CE certificates were "not in compliance," it cannot be liable for breaching its representations and warranties with respect to those CE certificates. Plus's argument is facile and misapplies the pleading standard.[2]

Courts may address the interpretation of contractual language on a motion to dismiss only

---

[2] Plus cites *Coca-Cola Bottling Co. v. Coca-Cola Co*., 769 F. Supp. 671 (D. Del. 1991) for the proposition that the fact the parties were aware of a circumstance at the time of contracting and did not provide for it operates to bar the claim. There, however, the court dismissed the breach of contract claim because *both* parties were "aware of the availability of substitute sweeteners and could have provided in the Consent Decrees or unamended contract for the use of substitute sweeteners, if the parties so chose." *Id*. at 693. By contrast here, Plus was the ***only*** contracting party that was aware that the CE certificates had been irrevocably canceled and could not be renewed by completing an overdue audit. Lorem was not aware of these true and undisclosed facts at the time of contracting. D.I. 1 ¶ 28. *Coca-Cola*, therefore, is inapposite.

3

"[w]hen the language of [the] contract is plain and unambiguous . . ." *Anschutz*, 2020 WL 3096744, at \*9 (quoting *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006)). Contract language is ambiguous "when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'" *Id.* (quoting *AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008)). "Dismissal of a plaintiff's breach of contract claim, therefore, is appropriate only when a defendant has offered the singular reasonable construction of the operative language as a matter of law, and that construction reveals there has been no breach." *Id.*

On the other hand, "[i]f the plaintiff has proffered a reasonable construction that supports its allegations of breach, dismissal must be denied." *Id.* That is precisely the case here with respect to Lorem's construction of Section 3.10(b) of the Disclosure Schedule, which provides:

- The certificates included in Exhibit 3.10(b) to these schedules [i.e., the CE certificates for the Cytori UK facility.]
- Not in compliance:  Last year, the Company [Plus] was supposed to perform an audit of the UK facility last year [2018].  This has not been done yet.  As a result, Inventory assembled in the UK facility cannot be exported to the UK or EU.

Lorem's reasonable interpretation of Disclosure Schedule § 3.10(b) was that the only reason why the CE certificates were "[n]ot in compliance" was because Plus "was supposed to perform an audit of the UK facility last year [2018]" which "ha[d] not been done yet," but that CE certification would be fully restored once the overdue audit was completed.  Indeed, the use of a colon immediately following "Not in compliance:" reasonably signifies that the CE certificates were "[n]ot in compliance" only ***because*** Plus "was supposed to perform an audit of the UK facility last year [2018]" which "has not been done yet."  The disclosure then states that "[a]s a result" of this lack of audit, inventory cannot be exported.  This further invites the reader to accept that the only reason why these products could not be exported was due to an outstanding audit.

4

Disclosure Schedule § 3.10(b) does not report the true and undisclosed facts that the CE certificates are not in compliance because Plus intentionally canceled them in 2018 or that they could never be restored to full compliance by completing the overdue audit.  It also omits the true and undisclosed fact that far more than an audit would need to be done before inventory could be exported.  At minimum, Lorem has alleged a reasonable construction of Disclosure Schedule §3.10(b) that supports its allegations of breach, which precludes dismissal of its claim.  *Anschutz*, 2020 WL 3096744, at *9; *Allied*, 910 A.2d at 1030; *AT&T*, 953 A.2d at 252.[3]

### 2.   Lorem Has Adequately Stated a Claim for Breach of Plus's Specific Representations and Warranties

Plus argues that most of the specific representations and warranties in the APA have nothing to do with CE certification and none contain any statement that a valid CE certificate covered the Cytori UK facility.  Again, however, Plus ignores the fact that each of the cited nine representations and warranties, only one of which is necessary to state a breach of contract claim, is, at the very least, susceptible to Lorem's proffered reasonable interpretation.

i.   Section 3.01

In Section 3.01 of the APA, Plus warranted (among other things) that:

Each of [Plus] and Cytori UK is an entity duly incorporated, validly existing, and, where applicable, in good standing under the laws of the jurisdiction of its incorporation and ha[d] all necessary corporate power and authority to enter into this Agreement and the Ancillary Agreements, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby and ***to conduct its business as it is now being conducted*** . . .

---

[3] Plus's reliance on *REI Holdings, LLC v. LienClear-0001, LLC*, 2019 WL 3546881 (D. Del. Aug. 5, 2019), is equally misplaced.  There, the court found plaintiff had "not sufficiently pleaded a claim for breach of the implied warranty of good faith and fair dealing" because the plaintiff was "asking the Court to read into the Sale Agreement a warranty that the Tax Liens would be worth more than the purchase price.  Such a significant revision to the terms of the contract is clearly beyond the limited role of which the implied covenant is supposed to play."  *Id.* at *9.  The portion of *REI* cited by Plus thus pertains to breach of the implied covenant, not breach of contract.

D.I. 1 ¶¶ 31(i), 36(i) (emphasis added).  Plus argues its corporate authority to do business has nothing to do with regulatory authorization to sell or export products to China.  But this is plainly not the only reasonable interpretation of this language.  "Business" could reasonably be construed to mean manufacturing products for sale in the UK, EU, or beyond.  Lorem reasonably understood it as such.  Indeed, the Complaint alleges that Plus exported products from the UK to China in response to an order from Lorem just before the APA was consummated.  D.I. 1 ¶ 25.  Plus breached this representation.  D.I. 1 ¶ 36(i).  Because Lorem has proffered a reasonable construction of Section 3.01 that supports its allegations of breach, dismissal of this breach of contract claim is inappropriate.  *Anschutz*, 2020 WL 3096744, at *9.

          ii.        <u>Section 3.06</u>

In Section 3.06 of the APA, Plus warranted (among other things) that:

> The Books and Records relating to the Business in the Territory, all of which have been made available to Buyer as of the date hereof, are complete and correct in all material respects and represent actual, bona fide transactions and have been maintained in accordance with sound business practices.

D.I. 1 ¶¶ 31(ii), 36(ii).  Plus argues that the APA's definition of Books and Records "exclud[es] the Clinical Files," which includes "all clinical and regulatory files."  RJN Ex. 1 at § 1.01.  But neither the APA nor Section 3.06 explicitly excludes or disclaims CE certificates.  Indeed, a CE certificate and related paperwork, including a cancellation letter, is not a mere "clinical" or "regulatory" file, as these files directly bear on the manufacturing, sale, and export operations of the business.  Plus breached Section 3.06 because its books and records were not "complete and correct in all material respects" with respect to such files in that the correspondence and documentation of the cancellation of the CE certificates were not made available to Lorem.  Because Lorem has proffered a reasonable construction of Section 3.06 that supports its allegations, this claim survives.  *Anschutz*, 2020 WL 3096744, at *9; *AT&T*, 953 A.2d at 252.

6

iii.     Section 3.08

In Section 3.08 of the APA, Plus warranted (among other things) that:

Since the Reference Date, except as set forth in <u>Section 3.08(a)</u> of the Disclosure, the Business and the Business of Cytori UK has been conducted in the Ordinary Course of Business and there has not occurred any (i) Material Adverse Effect, (ii) transfer, assignment, sale or other disposition of any asset that would be a Purchase Asset . . . or (iii) material damage, destruction or loss, or any material interruption in use, of any Purchased Asset, whether or not covered by insurance, or any changes in the amount or scope of insurance coverage.

D.I. 1 ¶¶ 31(iii), 36(iii).  Plus argues that this representation only applies as of the Reference Date of December 31, 2018 and that the lapse in CE certification occurred in January 2018.  But Plus ignores Lorem's allegation that Plus knowingly and illegally shipped products to China without a valid CE certificate in place on or about March 26, 2019, which was almost three months *after* the December 31, 2018 Reference Date, and which was an unlawful shipment that Lorem reasonably interprets as a "material damage, destruction or loss" since the Reference Date.  D.I. 1 ¶ 25. Because Lorem has proffered a reasonable construction of Section 3.06 that supports its allegations, dismissal of this breach of warranty claim is inappropriate.  *Anschutz*, 2020 WL 3096744, at *9; *Allied*, 910 A.2d at 1030; *AT&T*, 953 A.2d at 252.

iv.     Sections 3.10 (a)-(e)

The Complaint alleges that Plus breached Sections 3.10 (a) through (e) of the APA because it failed to fulfill various warranties therein.

With respect to Sections 3.10(a)-(b), Plus warranted that: (1) Plus "conducted business in accordance with all laws and Government Orders applicable to the Business in all materials respects" (¶ 3.10(a)); and (2) Plus "is and has been since the Reference Date, in full compliance with all of the material terms and requirements of each Permit identified" (¶ 3.10(b)).  D.I. 1 ¶¶ 31(iv)-(v), 36(iv)-(v).  Plus argues Lorem fails to allege that exporting products without a valid CE certificate violates any "Law or Governmental Order" in Section 3.10(a) and that, to the

7

contrary, Plus disclosed that its CE certificates were "not in compliance" in Section 3.10(b) of the Disclosure Schedule. However, Lorem specifically alleged that a "valid CE certificate for Class IIa, Class IIb and Class III products issued to the manufacturer Cytori Ltd. in the EU is necessary to support the Free Sale Certificate for importation of the Celution medical devices into China."[4] D.I. 1 ¶ 16. Lorem also alleged Plus did not disclose the cancellation of its CE certificates. The Complaint thus adequately alleges breach of these provisions.

With respect to Section 3.10(c), Plus warranted that its "submissions materials and all information derived therefrom for permits from the government were "true, complete and correct in all material respects as of the date of submission." D.I. 1 ¶¶ 31(vi), 36(vi). Although Plus states it notified BSI on August 3, 2018 of its management's decision "to cancel the above CE certificates for Cytori Ltd. held with BSI," this critical fact  was intentionally withheld and *was not known or disclosed* to Lorem. Lorem did not learn of it until months after the APA closed, and nowhere does the APA or Disclosure Schedule § 3.10(c) reveal that the CE certificates had been irrevocably canceled. Instead, Lorem's reasonable interpretation of all government "permits" being "true, complete and correct in all material respects" meant that all CE certificates (being as they are permits to export Class IIa, Class IIb and Class III products from the UK to China) were valid and in force, aside from the outstanding audit.

---

[4] Moreover, the People's Republic of China Decree No. 650, Article 9 provides that "Class II and Class III medical device product registration application information inspection reports [sic] shall be issued by the inspection bodies of medical devices inspection reports." Article 42 provides that "imported medical devices . . . shall satisfy the provisions of this Ordinance and related standard requirements, and instructions for medical devices set out in country of origin" and medical devices whose "labels do not conform to the provisions of this article may not be imported." Regulations on Supervisory Management of Medical Devices (promulgated as Decree No. 650 of the State Council of the People's Republic of China, February 12, 2014, effective June 1, 2014), https://www.global-regulation.com/translation/china/158926/regulations-on-supervision-and-administration-of-medical-devices.html (China).

In Sections 3.10(d) and (e), Plus warranted it had no notice of any "facts or circumstances existing that would reasonably be expected to serve as a basis for" a violation of the law (¶ 3.10(d)); and that it had no knowledge of any grounds for "any action to request the recall of any products produced" (¶ 3.10(e)).  D.I. 1 ¶¶ 31(vii)-(viii), 36(vii)-(viii)).  Plus argues Lorem has not alleged that Plus received any notice of any violation or recall actions, and that more than two years have passed since the representations made in Section 3.10(d) without incident.  But this does not address the above-quoted portions of these sections—whether Plus was aware of facts or circumstances that could serve as the basis for such an action.  Here, Lorem has alleged (among other things) that Plus's March 2019 shipment to China without a valid CE certificate in place was an event giving rise to a potential legal action.  D.I. 1 ¶¶ 16, 36(iii).  Because Lorem has proffered a reasonable construction of these sections that support its allegations, dismissal of these breach of contract claims is inappropriate.  *Anschutz*, 2020 WL 3096744, at *9; *Allied*, 910 A.2d at 1030.

> v.   Section 3.15

In Section 3.15 of the APA, Plus warranted (among other things) that:

> Except as forth in <u>Section 3.15</u> of the Disclosure Schedule, the Purchased Assets and the assets of Cytori UK (a) constitute all of the assets, tangible and intangible, of any nature whatsoever, used to operate (**and to the Knowledge of Seller, necessary to operate**) the Business in the Territory in the manner presently operated by Seller and Cytori UK, and as has been conducted in the past year, in the Territory . . . .

D.I. 1 ¶¶ 31(ix), 36(ix) (emphasis added).  Plus argues that Lorem does not allege any facts showing that the Purchased Assets did not include all of the assets that Plus used to operate the business because its CE certificates were suspended in August 2018, more than seven months before execution of the APA.  But Plus's argument ignores Lorem's reasonable interpretation of "in the past year."  That Plus canceled its CE certificates in August 2018 unbeknownst to Lorem *confirms* that the Purchased Assets were insufficient to export products from the UK to China and

otherwise operate the Business as it was conducted in 2018, which is the year prior to the APA. In fact, the cancellation of the CE Certificates in August 2018 indicates that the Purchased Assets were insufficient to operate the Business as it was then conducted weeks prior to the APA as well as in the prior year. Because Lorem has alleged a reasonable interpretation of Section 3.15 demonstrating breach, dismissal is inappropriate. *Anschutz*, 2020 WL 3096744, at *9; *Allied*, 910 A.2d at 1030; *AT&T*, 953 A.2d at 252.[5]

### B. Lorem Has Adequately Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Plus argues that Lorem's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because Lorem has not identified any specific implied obligation of the APA that Plus breached. But that is inaccurate. Each of the specific covenants that Lorem identified in the Complaint carries the implied obligation of Plus to prevent or rectify any discrepancy between what Plus promised to deliver and what was actually delivered. *See Alltrista Plastics, LLC v. Rockline Inds., Inc.*, 2013 WL 5210255, at *7 (Del. Sup. Ct. Sep. 4, 2013) (finding that plaintiff Rockline stated a viable claim for breach of the implied covenant because "there was an implied obligation that the parties would work together to determine why the canisters failed" and defendant "Jarden's failure to assist Rockline in this manner . . . was unreasonable and prevented Rockline from receiving the fruits of its bargain.").

As in *Alltrista*, Plus's covenants that each "Permit listed or required to be listed in Section 3.10(b) of the Disclosure Schedule is valid and in full force and effect" and that "no event has occurred or circumstance exists" that has resulted "in the revocation, withdrawal, suspension, cancellation or termination of any Permit" carry with them the following implied covenants:

---

[5] Lorem's claim that Plus also breached Section 9.02 by wrongfully refusing to indemnify Lorem is derivative of its claims for breach of Plus's representations and warranties. Because Lorem has adequately alleged those claims, its derivative Section 9.02 claim survives as well.

(i) Plus would obtain full compliance with all Permits "identified or required to be identified in Section 3.10" (such as the CE certificates for Cytori UK); (ii) Plus would cure or prevent the occurrence of any event or circumstance that would result in the revocation or cancellation of all such Permits (including the CE certificates); and (iii) if the CE certificates were invalid or canceled, then "the parties would work together" to cure any defects and restore the validity of such certificates so that Lorem is not prevented from "receiving the fruits of its bargain." *Alltrista*, 2013 WL 5210255, at *7.  Lorem pleaded breach of these implied covenants when it alleged that Plus "unfairly interfered with Lorem's right to receive the benefits of the APA" and "depriv[ed] Lorem of the ability to sell and manufacture products at Cytori UK, and export such products to the UK, EU, and China" when it sold the UK facility with cancelled CE certificates.  D.I. 1 ¶ 48.

Citing several inapposite cases, Plus next argues that the implied covenant of good faith and fair dealing cannot be used to infer contract terms when the subject matter is already covered by the express terms of the contract.  In *Southern Track & Pump, Inc. v. Terex Corp*., 623 F. Supp. 2d 558 (D. Del. 2009), the court dismissed the breach of implied covenant claim because "no promises regarding financing ultimately made their way into the Agreement, despite the fact that the parties repeatedly discussed the topic."  *Id*. at 563.  Similarly, in *vMedex, Inc. v. TDS Operating, Inc*., 2020 WL 4925512 (D. Del. Aug. 21, 2020), the court ruled that it "will not add terms [to the parties' agreement] when it is apparent that the parties already considered and bargained for them."  *Id*. at *9.  Here, by contrast, the parties never discussed (and Plus never disclosed) that unbeknownst to Lorem, Plus intentionally canceled its CE certificates for Cytori UK in 2018, which destroyed Lorem's prospects to export products lawfully from Cytori UK to China post-APA (the entire motivation and purpose of the APA for Lorem).  Plus was operating its business up to the time of the APA as if the CE certificates for Cytori UK existed when they

11

did not.  Lorem was therefore not on notice of this issue (by Plus's design) and so did not seek

further covenants.[6]   Accordingly, Lorem's claim for breach of the implied covenant survives

challenge.[7]

      **C.**      **Lorem Has Stated a Claim for Fraudulent Inducement**

            **1.**      **Lorem Has Pleaded Plus's False Statements with Particularity**

With respect to the fraudulent inducement claim, Plus distorts Lorem's allegations and

summarily contends the alleged facts fail the particularity requirements of Federal Rule of Civil

Procedure 9(b).  But under Rule 9, a plaintiff need only "'allege the circumstances of the fraud

with detail sufficient to apprise the defendant of the basis for the claim.'"  *LVI Grp. Inv., LLC v.*

*NCM Grp. Holdings, LLC*, No. 12067-VCG, 2017 WL 1174438, at *4 (Del. Ch. Mar. 29, 2017).

"[A] defendant's state of mind, such as its knowledge and intent, may be averred *generally*, or, in

other words, a plaintiff need only point to factual allegations making it reasonably conceivable

that the defendants charged with fraud knew the statement was false."  *Id.* (internal quotations

omitted) (italics in original).  Lorem has sufficiently pleaded all misrepresentations.

First, Lorem alleges Plus represented and warranted in Section 3.10(b) of the Disclosure

Schedule to the APA that its CE certificates were not in compliance on the date of closing as a

---

[6] In another of Plus's cited cases, *Truinject Corp. v. Nestlé Skin Health, S.A.*, 2020 WL 70981 (D. Del. Jan. 7, 2020), the court dismissed plaintiff Truinject's breach of implied covenant claim because the "Amended Complaint fails to allege what term Truinject seeks to imply into the [parties' contract]."  *Id.* at *16.  As shown above, however, Lorem has identified several specific covenants that are implied by the APA.

[7] Plus's representation that a court dismissed a "similar" claim by Lorem in *Lorem Vascular, Pty. Ltd. v. Cytori Therapeutics, Inc*., 2018 WL 3388096 (S.D. Cal. Jul. 11, 2018) is wrong.  There, the Court dismissed Lorem's breach of implied covenant claim because even if an oral modification of the parties' written Stock Purchase Agreement were implied, "a written modification of the Stock Purchase Agreement could have been drafted to expressly provide for the purchase of 5% of Plaintiff's stock."  *Id.* at *7.  No similar oral or written modification of the APA is at issue here. Nor did this prior case involve a misrepresentation which induced Lorem to negotiate no further or scrutinize the underlying issue, as is the case here.

result of an audit that it was supposed to perform, but which had not been done yet.  The plain language of this representation falsely indicated the *only* reason why the CE certificates were non-compliant was due to the failure to perform an overdue audit.  D.I. 1 ¶ 19.  In actuality, however, Plus had intentionally canceled the CE certificates in 2018, which meant they could not be restored.  These Certificates no longer existed.  D.I. 1 ¶ 20.  Plus never disclosed or provided Lorem a copy of the Notice of Termination of the CE Certificate for Cytori Ltd.  D.I. 1 ¶ 18.  Had Lorem known the true and undisclosed facts prior to closing, Lorem would never have consummated the APA.  D.I. 1 ¶ 30.  Thus, contrary to Plus's assertion that Lorem has not alleged any factual support for the purportedly "wild inference" that only a routine audit was required to restore the CE certificates, Lorem has alleged a reasonable inference that Plus's representation in Disclosure Schedule § 3.10(b) was knowingly false when made.  *See Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015) ("When a party sues based on a written representation in a contract, . . . it is relatively easy to plead a particularized claim of fraud. . . . [T]he plaintiff need only allege facts sufficient to support a reasonable inference that the representations were knowingly false.").

Second, Lorem has sufficiently pleaded the misrepresentations made during negotiations with particularity.  Throughout the negotiation process, Plus's officers and directors, including Tiago Girão, represented that Cytori UK's facility was CE compliant.  D.I. 1 ¶ 19.  Specifically, Plus presented CE certificates to Lorem (CE 619294 and CE 622786) that appeared valid on their face without any notice of suspension or termination.  D.I. 1 ¶ 19(i).  On April 8, 2019 (over a week after the APA was signed), the data room created by Plus to house due diligence materials for Lorem's review confirmed "suspensions or cancellations (NONE)."  D.I. 1 ¶ 4 (capitalization in original).  Mr. Girão also repeatedly confirmed to Mr. Soneff, Mr. Kleinhenz, and KT Lim at

Lorem that Cytori UK was CE Certified leading up to the closing of the APA.  D.I. 1 ¶ 19(v).

Unbeknownst to Lorem, but well-known to Plus, Cytori UK was not CE Certified because Plus

canceled the CE certificates in 2018.  D.I. 1 ¶ 20.  Plus knew full well that Lorem would not

execute the APA if the CE certificates had been canceled, so Plus misrepresented the true nature

of the certification status in order to induce Lorem to execute the APA.  D.I. 1 ¶ 23.

The Complaint clearly identifies Plus's misrepresentations, describes who misrepresented

the information, what was misrepresented, how it was misrepresented, when it was misrepresented,

where it was misrepresented, and why it was misrepresented.  Lorem's allegations place Plus on

ample notice of the misconduct with which it is charged.  Therefore, Lorem's allegations more

than meet the particularity requirement of Rule 9(b).  *See Anschutz*, 2020 WL 3096744, at *17

(denying motion to dismiss fraud claim because the allegations "put the OnRamp Insiders on

notice of the specific misconduct with which they are charged.").[8]

### 2.  Lorem's Fraudulent Inducement Claim is Distinct from its Breach of Contract Claim

Plus erroneously asserts that Lorem's fraudulent inducement claim "bootstraps" its breach

of contract claim.  Mov. Br. at 19.  But Plus overlooks that "the anti-bootstrapping rule does not

apply where a plaintiff has made particularized allegations that a seller knew contractual

representations were false or lied regarding the contractual representation."  *Swipe Acquisition

Corp. v. Krauss*, No. 2019-0509-PAF, 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020) (citing

*Anschutz*, 2020 WL 3096744, at *15).  "Contractual representations may form the basis for a fraud

claim where a plaintiff has alleged facts 'sufficient to support a reasonable inference that the

---

[8] *Kircher v. Wyndham Vacation Resorts, Inc.*, No. CV 20-436-CFC, 2021 WL 1198314, at *3 (D. Del. Mar. 30, 2021) is inapposite because the plaintiffs there wholly failed to allege who made the misrepresentations, where they were made, and when they were made.  Nor did the plaintiffs "otherwise inject into the Complaint a degree of precision or some measure of substantiation to their allegations that would provide sufficient notice" of the alleged fraud.  *Id.* at *4.

representations were knowingly false.'" *Id.* (quoting *Prairie Capital III*, 132 A.3d at 62). "Allegations related to the inducement to contract have been recognized as separate and distinct conduct, while those focused on inducement of continued performance are generally impermissible." *Hiller & Arban, LLC v. Reserves Mgmt., LLC*, No. CV N15C-02-161 WCC, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016) (internal quotation marks omitted).

Here, Lorem's allegations of fraud in the inducement are separate and distinct from its breach of contract claim. Notably, Lorem does not allege that Plus committed fraud by failing to perform under the APA.[9] Rather, Lorem alleges Plus knowingly made false promises during negotiations that the CE certification status of the UK facility was intact, and later falsely represented in the APA that the CE certificates were not in compliance on the date of closing due to the failure to complete a routine audit. *See* D.I. 1 ¶¶ 19-21. As such, Lorem has sufficiently pleaded "separate and distinct" conduct. *See Voterlabs*, 2020 WL 6131760, at *10 (finding the fraud counterclaim is not impermissibly bootstrapped to the breach of contract claim because "[t]he amended counterclaim contains several particularized allegations that Voterlabs lied about contractual representations it knew were false."); *Osram Sylvania Inc. v. Townsend Ventures, LLC*, No. 8123-VCP, 2013 WL 6199554, at *16 (Del. Ch. Nov. 19, 2013) (finding that a fraud claim was distinct from a contract claim where the buyer "pointed to specific misrepresentations by Sellers, including misrepresentations about the sales results and financial condition of the Company made *before* the execution of the SPA") (emphasis in original).

---

[9] The cases cited by Plus are therefore inapposite. *See Frazier v. Am. Airlines, Inc.*, No. 03-Civ. 734 JJF, 2004 WL 2223298, at *4 (D. Del. Sept. 30, 2004) (dismissing fraud claim because the plaintiffs only alleged the contracting parties never intended to perform); *Red Mtn. Holdings, Ltd. v. Stout P'ship*, No. 00 Civ. 190(JJF), 2001 WL 34368400, at *4 (D. Del. Mar. 30, 2001) (same); *Cornell Glasgow, LLC v. La Grange Props., LLC*, No. 11 Civ.05-016 (JRS), 2012 WL 2106945, at *8 (Del. Super. Ct. June 6, 2012) (dismissing fraud claim based on failed performance).

15

Moreover, Lorem's fraud and contract claims seek distinct damages.  *Compare* D.I. 1 ¶ 56 ("As a direct and proximate result of Plus's fraudulent conduct, Lorem has been damaged in an amount to be proven at trial, including expenses incurred in the negotiations and due diligence prior to the transaction, foregone opportunities, and the numerous consequences flowing from the APA, and in an amount of at least $6,000,000") *with* D.I. 1 ¶ 44 ("As a direct and proximate result of Plus's failure to perform its contractual obligations, Lorem has been damaged in an amount to be proven at trial but in an amount of at least $6,000,000.").  Dismissal is therefore improper.  *See FinancialApps, LLC v. Envestnet, Inc.*, No. CV 19-1337-CFC-CJB, 2020 WL 4569466, at *8 (D. Del. July 30, 2020), *rep. & rec. adopted*, No. CV 19-1337-CFC/CJB, 2020 WL 5552456 (D. Del. Sept. 15, 2020) (finding plaintiff's fraud damages distinct from that of breach of contract where the fraud claim seeks to recover the lost business opportunity and profits the plaintiff would have gained by entering into a licensing agreement with another firm); *cf. EZLinks Golf, LLC v. PCMS Datafit, Inc.*, No. 16 Civ. 07-080 (PRW) (CCLD), 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017) (dismissing fraud claim where fraud and breach of contract damages were "identical").

### 3.     Lorem Has Adequately Pleaded Justifiable Reliance

Plus argues that Lorem cannot plausibly allege it justifiably relied on any of Plus's misrepresentations.  As an initial matter, "'[t]he question of whether one's reliance was reasonable generally is a question of fact . . . .  The reasonableness of one's reliance on false information depends on all of the circumstances.'"  *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, No. N14C-12-112 WCC CCLD, 2015 WL 5968726, at *7 (Del. Super. Ct. Sep. 25, 2015) (quoting *Vague v. Bank One Corp.*, No. 511, 2003, 2004 WL 1202043, at *1 (Del. May 20, 2004)).  As such, whether Lorem's reliance upon Plus's misrepresentations was reasonable is not suitable for resolution on a motion to dismiss.  *See id.* (citing *Iacono v. Barici*, No. Civ.A 06C-02-021RFS, 2006 WL 3844208, at *3 (Del. Super. Ct. Dec. 29, 2006) (denying motion to dismiss fraud claim on grounds

16

that reliance was unjustified because it is generally a question of fact)).

Even if the Court considers Plus's improper and premature argument regarding justifiable reliance (it should not), Plus misconstrues Lorem's allegations and disregards the relevant law. Specifically, Plus focuses exclusively on the Section 3.10(b) disclosure, while ignoring the misrepresentations made leading up to the execution of the APA, and contends that the APA's integration clause precludes Lorem from relying on Plus's extra-contractual misrepresentations. While Delaware courts enforce clear anti-reliance provisions, *see Prairie Capital III*, 132 A.3d at 50; *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006), an enforceable anti-reliance provision must contain an explicit promise by the plaintiff that it did not rely on extra-contractual statements. *Abry*, 891 A.2d at 1059. "If parties fail to include unambiguous anti-reliance language, they will not be able to escape responsibility for their own fraudulent representations made outside of the agreement's four corners." *Id.*

Several courts have held that an integration clause, like the one set forth in the APA,[10] does not reflect an intent to disclaim reliance upon extra-contractual misrepresentations. *See, e.g.*, *Heritage Handoff Holdings, LLC v. Fontanella*, No. 1:16-cv-00694-RGA, 2019 WL 1056270, at *4 (D. Del. Mar. 6, 2019) (denying dismissal when agreement's only potential language disclaiming reliance read: "This Agreement and the Related Agreements constitute the entire agreement between and among the parties . . . and supersede[s] all other prior agreements and understandings, both written and oral, . . . with respect to the collective subject matter hereof and thereof . . ."); *Anschutz*, 2020 WL 3096744, at *14 (same). As such, Lorem is entitled to rely on

---

[10] The parties' integration clause provides that the APA "constitute[s] the entire agreement of the parties hereto with respect to the subject matter hereof and thereof and supersede[s] all prior agreements and undertakings, both written and oral, between Seller and Buyer with respect to the subject matter hereof and thereof."  RJN Ex. 1 at § 11.05.

the misrepresentations Plus's officers and directors made during the negotiation process.

Contrary to Plus's contention, there is no contradiction between the representations set forth in the APA and the misrepresentations made throughout the negotiation process.[11]   As detailed in the Complaint, Plus repeatedly informed Lorem that the certification status of the UK facility was intact during negotiations.  D.I. 1 ¶ 19.  Plus then misrepresented the status of the CE certificates in Section 3.10(b) of the Disclosure Schedule, stating the CE certificates were not in compliance due to the failure to complete a routine audit.  D.I. 1 ¶ 26.  This created the false impression that the CE certificates actually existed and that the only action needed was to conduct an overdue audit.  D.I. 1 ¶ 27.  Additionally, at no time prior to or after the closing of the APA did Plus discuss, reference, disclose, or provide Lorem a copy of the Notice of Suspension of the CE Certificate or the Notice of Termination of the CE Certificate.  D.I. 1 ¶ 18.  Plus knew Lorem would detrimentally rely on these misrepresentations because Lorem informed Plus on several occasions that it was essential to the APA that the Cytori UK facility be CE certified.  D.I. 1 ¶ 23. Based on Plus's repeated misrepresentations, Lorem had no reason to suspect—let alone know— that the CE certificates had expired altogether.[12]

Accordingly, Lorem has more than sufficiently alleged a reasonable inference that it justifiably relied on Plus's misrepresentations.  *See McDonald's Corp. v. Easterbrook*, No. 2020-

---

[11] Plus's reliance on *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 402 (D. Del. 2005), *aff'd*, 502 F.3d 212 (3d Cir. 2007), is misplaced.  The decision in *Tracinda*, a *securities fraud* lawsuit arising out of pre-merger statements, was issued following a lengthy bench trial.  *Id.* at 365.  The court found plaintiff's reliance on pre-merger oral representations was unreasonable because "the clear language of the [contract] is at odds with" the pre-merger statements made by the defendant.  *Id.* at 402.  No such contradiction is present in the case at bar.  Nor did Lorem disclaim reliance upon Plus's extra-contractual misrepresentations.
[12] *Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635, 640 (D. Del. 2014), is plainly inapplicable.  There, the court expressly stated that claimant "had inquiry notice of the alleged fraud *prior to and at the time of* execution of" the agreement.

0658-JRS, 2021 WL 351967, at *9 (Del. Ch. Feb. 2, 2021) (denying motion to dismiss fraudulent inducement claim because the "Complaint alleges a constellation of facts that allow a reasonable inference the Company relied on Easterbrook's statements").

      **D.**    **Lorem Has Sufficiently Alleged a Claim for Negligent Misrepresentation**

      Lastly, Plus incorrectly contends Lorem cannot pursue its negligent misrepresentation claim because no facts are alleged showing a duty to disclose on the part of Plus.  The law provides:

> that a party to a business transaction has a duty to exercise reasonable care to disclose: . . . 2) information that is undisclosed will cause its partial statements of facts to be misleading; or 3) facts basic to the transaction 'if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*In re Student Fin. Corp. v. Royal Indem. Co.*, 2004 WL 609329, at *5 (D. Del. Mar. 23, 2004) (quoting Restatement (Second) of Torts § 551).  Lorem's complaint amply alleges facts supporting both of these scenarios.  As detailed *supra*, Plus made partial statements about the status of its CE certification, which falsely indicated that only an audit was needed to restore compliance.  By failing to explain that the CE certificates had been cancelled altogether, such that no audit would be of any use, Plus failed to meet its duty to provide this further information to prevent a misleading impression.  *See id.* (denying motion to dismiss negligent misrepresentation claim where defendant "has not established, under all the circumstances articulated by Section 551 of the Restatement (Second) of Torts, that SFC has failed to plead facts sufficient to establish a duty to speak."); *Mentis v. Delaware Am. Life Ins. Co.*, 1999 WL 744430 (Del. Super. July 28, 1999) (duty to speak may arise from partial disclosure requiring supplementation to avoid a misleading impression).

      Likewise, between the two parties to the transaction, only Plus knew its CE certification situation.  Plus also knew that Lorem was relying on Plus to provide all information regarding its CE certification status.  Yet Plus failed to provide this information even as it knew Lorem was

about to enter into the APA under the incorrect impression that once an audit was performed, the CE certification would be restored. *See In re Student Fin. Corp.*, 2004 WL 609329, at *5. Under these factual circumstances, Plus had a duty to Lorem to accurately disclose that its CE certificates had been canceled altogether, and far more than an audit would be needed to reestablish compliance. In failing to provide this necessary information to cure the misimpression created by its disclosure and representations preceding the APA, Plus committed negligent misrepresentation.

Plus further ignores the allegations in the Complaint of a preexisting licensor-licensee relationship between the parties, under which:

> Plus was required to establish and subsequently did establish a . . . 'CE' certified product manufacturing facility in the United Kingdom to enable the appropriate and/or authorized regulatory status of products in China. This was known by all parties to be essential to Lorem's business at all times from the inception of their relationship in 2014 to the date of the APA.

D.I. 1 ¶ 2. Lorem thus relied on Plus to maintain its CE certification status for the products that Lorem had been licensed to sell in China, among other places. This pre-existing relationship of trust and reliance constitutes further circumstances giving rise to a duty to disclose by Plus. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 113 (Del. 2006) (duty to avoid negligent misrepresentation found where "one person reposes special trust in another or whether a special duty exists on the part of one person to protect the interests of another.").[13] Accordingly, Lorem's factual allegations establish a claim for negligent misrepresentation.

## V.    CONCLUSION

For the foregoing reasons, Plus's motion to dismiss should be denied in its entirety. Should any part be granted, Lorem requests leave to amend with respect to any dismissed claims.

---

[13] By stark contrast, in Plus's single case on this point, *Keystone v. Barclays Bank PLC*, No. 19 Civ. 796 (MN), 2020 WL 109008 (D. Del. Jan. 9, 2020), the plaintiffs alleged misrepresentations by Barclays despite no allegations "that Barclays had played any role in connection" with the transaction "or that Plaintiffs ever interacted with Barclays" at all.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Travis J. Anderson
James V. Fazio
Jenna G. Crawford
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130
(858) 720-8900

Dated:  September 9, 2021
7365984

By: */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Plaintiff*