**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LOREM VASCULAR, Pte. Ltd., a Singapore Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-00885-EJW |
| | ) | |
| PLUS THERAPEUTICS, INC. f/k/a CYTORI THERAPEUTICS, INC., a Delaware corporation; and DOES 1 through 30, inclusive, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATED ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

**1.     General Provisions**

      a.     **Scope**.  This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), and any other applicable orders and rules.  The parties' agreement to the terms of this Order should not be deemed an acknowledgment that any information hereby excluded from discovery would or would not be discoverable in the absence of this Order.  Nothing in this Order shall waive in whole or in part any objection raised by a party in its written responses to specific discovery requests served in this action.

      b.     **Proportionality.**     Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.  This includes identifying appropriate limits to discovery, including limits on custodians, identification of

relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

     c.    **Modifications.**  This Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

     d.    **Preservation of Discoverable Information.**  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

       i.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

       ii.    Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A, Section I attached hereto need not be preserved.

     e.    **Rolling Productions**.  The parties will endeavor to produce documents in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure.  Production in this litigation is anticipated to be conducted on a rolling basis with parties making reasonable efforts to expedite the process.  If either party feels production has been unreasonably delayed, the parties agree to meet and confer to reach a mutually agreeable consensus prior to involving the Court.  For any previously produced records that produced with incomplete family members that were later supplemented through a rolling production, or any records that are found to be duplicative from other custodians' data sets that are supplementally responsive, the parties shall provide updated DAT overlay load files containing updated production family range bates numbers (PRODBEGBATES, PRODENDBATES, PRODBEGATTACH, PRODENDATTACH) and the CUSTODIAN_ALL fields as updated.  After the parties' document

productions are complete, the parties will also provide an updated load file including PRODBEGBATES, CUSTODIANS ALL and FILE PATHS ALL fields.

      f.    **Privilege and Lack of Waiver.**

          i.    The parties conferred on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

          ii.    For all documents withheld or redacted on the basis of privilege, the parties agree to furnish logs that comply with the legal requirements under federal law, but at a minimum will include the following information: (a) a unique number for each entry on the log; (b) the date of the document; (c) the author and recipient(s) of the document where reasonably ascertainable, (d) a description of the contents of the document that, without revealing information that is privileged or protected, is sufficient to explain why privilege is being asserted over the document; (e) the type of privilege being asserted (e.g. attorney-client privilege, work product doctrine); and (f) for redacted documents only, the Bates numbers corresponding to the first and last page of any document redacted.

          iii.    Any email chain (i.e., a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document and shall be identified by the top-most email in the chain that is withheld or redacted.  The parties shall not be required to log identical copies of an email that is included in a chain that has been logged in accordance with this paragraph, but shall include in the privilege log the names of all other participants in in the chain not already captured in the top email of the chain.  To the extent there are emails in the chain that do not contain the same

sender(s) and recipient(s) as the top-most email that is logged, each email with unique sender(s) and recipient(s) must be logged separately.

       iv.    If an email chain contains both privileged and non-privileged communications, the non-privileged communications must be produced, either by separately producing a copy of the non-privileged communications embedded in the privileged communication, or by producing a copy of the entire communication string with the privileged portions redacted.

       v.    Responsive documents and things subject to the attorney-client privilege, work product protection, and/or other applicable protection/immunity, including privileged or protected communications between a party and its respective Counsel of Record, as well as those communications with a party's counsel or Counsel of Record or subject to the joint defense or community of interest/common interest immunity occurring after the date of filing of Plaintiff's initial Complaint, need not be produced or disclosed on a privilege log in response to a discovery request served by another party, except as required to rely on an opinion of counsel as part of a defense in this Action.

       vi.    The parties agree to negotiate a reasonable time within which to exchange privilege logs.

       vii.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

       viii.    The procedures governing inadvertent production of privileged documents are set forth in Section 7 of the Protective Order entered in this action (D.I. 29).

## 2.    <u>ESI Disclosures</u>

       a.    The parties will meet and confer to reach agreement on reasonable custodians, data sources, date ranges, and, if relevant, search terms, for purposes of collection, review, and

production of electronically stored information.   A party will provide a proposed list of ESI custodians within 14 days after service of the first set of requests for production of documents on that party.  Parties may revise or adjust their list of ESI custodians as discovery progresses.

      b.    **Notice**.  In a reasonably timely manner, the parties shall identify any issues relating to:

      i.    Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). The producing party shall timely identify such ESI with reasonable particularity and shall provide the receiving party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI) and the location of such ESI. The parties shall negotiate in good faith concerning the production of any such ESI.  The data sources not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) will be preserved but not searched, reviewed, or produced until if/when the parties reach an agreement.  Notwithstanding the foregoing, except upon a showing of good cause, the data sources and document types identified in Schedule A, Section I are not discoverable and need not be preserved.

      ii.    Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

iii.     Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.  Nothing in this Order is intended to prevent either party from complying with the requirements of any foreign country's data privacy laws.

3.     **Specific E-Discovery Issues**

a.     **On-site inspection of electronic media.**  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b.     **Search methodology**.  The parties will meet and confer in good faith regarding the disclosure of search methodology, including, if relevant, the formulation and use of search terms and/or application of technology assisted review (TAR).  If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. After receipt of the search terms, the requesting party shall raise any concerns and propose any additions or modifications it may have to the search terms.  As part of the meet-and-confer process to select search terms and custodians, the producing party must provide a hit report if reasonably requested by the receiving party.  Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed, unless the over-broad terms are combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A party requesting documents may request that the producing party utilize additional search terms, and the parties will meet-and-confer regarding the use of additional search terms.

c.     **Technology Assisted Review.**  If a party intends to use TAR to cull or otherwise exclude ESI from collection, review, or production, the parties shall meet and confer to agree on a TAR protocol, including validation and disclosure of TAR metrics.  The parties agree to meet and

confer regarding using TAR on paper documents or structured data types.  The parties do not need to disclose the use of TAR solely for the purposes of sorting or prioritizing documents for review.

      d.    **Format**.  ESI and non-ESI shall be produced to the requesting party as a single-page tagged image file format ("TIFFs") with at least 300 DPI print setting.  When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.  The parties shall produce their information in the following format:  single page TIFF images and associated multi-page text files containing extracted text or Optical Character Recognition ("OCR") with Concordance and Opticon load files containing all requisite information including relevant metadata.  Documents shall also be produced with load files that shall denote document breaks, if applicable.  A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format to the extent reasonably accessible.

      e.    **Text Searchable Documents.**  If there is no extractable text, the producing party shall perform OCR on the document and provide the associated text file.  All text files should be produced as document level text files with a path to the text file included in the database load file; extracted text/OCR should not be embedded in the load file itself.

      f.    **Footer.**  Each document image shall contain a footer with a sequentially ascending production number and the appropriate confidentiality designation.  The Bates number must not obscure any part of the underlying data.

      g.    **Native files**.  The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files and audio or video media files.

Native files shall be designated by including a unique production number and appropriate confidentiality designation in the native document's file name and a corresponding slipsheet with the production number and confidentiality designation.  Documents produced in native format shall be accompanied by a directory, load file, or Bates number linking file in .csv format, or if such format is not practicable, in another commonly used directory/load file format such as .opt, and .dat.  To the extent that a party intends to use a document produced in native format for depositions, pleadings, trial or for any other purpose where the document produced natively does not originally contain pagination and the identification of individual pages is necessary, that party may sequentially number the individual pages of the document and include the appropriate confidentiality designation.

       h.      **Hard Copy Documents.**  Documents that exist only in hard copy shall be scanned and produced as TIFFs.  OCR text should be provided, as well as the Custodial information and any box/foldering information, as available

       i.      **Image-Only Files.**  All image-only files (including non-searchable .PDFs, multi-page TIFFs, Snipping Tool screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata.  Powerpoint Presentations containing speaker notes, or Microsoft Word documents containing track changes shall be imaged in a way that shows all comments, notes, tracked changes, and hidden text.

       j.      **Metadata fields.**  Each of the metadata and coding fields set forth in Schedule A, Section II that can be extracted from a document shall be produced for that document.  The parties are not obligated to populate manually any of the fields in Schedule A, Section II if such fields cannot be extracted from a document, with the exception of the BATES-related, PRODVOLID, CUSTODIAN, CUSTODIANS_ALL, and TIMEZONE fields, which shall be populated by the

producing party.  To the extent any of the metadata fields in Schedule A are not reasonably practical to include due to the limitations of the ESI in question or particular discovery vendor software, the parties will endeavor to provide substantially similar metadata.

k.      **Email.**  Email shall be collected in a manner that maintains reliable email metadata and structure.  Unless otherwise agreed to by the Parties, email collections shall include calendar meetings and appointments.  All attachments to a responsive email must be produced.

i.      If a party determines that additional custodians or search terms are required and the parties are unable to reach agreement regarding the request following good faith meet and confer efforts, the party requesting additional custodians and/or search terms may seek relief from the Court based on a showing of good cause.  The Court shall consider contested requests for additional custodians and/or search terms, upon showing a distinct need based on the size, complexity, and issues of this specific case.

l.      **Cellphone Data**

i.      To the extent requested, the parties will meet-and-confer to determine whether discovery from the cell phone of any particular custodian is relevant or proportional to the needs of the case.  To the extent produced, the parties will endeavor to follow the following protocols for cell phone data, to the extent it is reasonably practical in light of the parties' discovery vendor collection techniques and/or the cell phone data in question.  Text or chat message data retrieved from a cellphone, application, or the cloud shall be collected in Relativity Short Message File (RSMF) format and conversations shall be parsed by 24 hour increments.  Multimedia files, such as images, GIFs, videos, audio files, etc. that are sent via text message or chat shall be produced both embedded within the RSMF image, as well as separately as an attachment, linked to its parent record through an attachment ID.

m. **Color.** In order to reduce costs, the parties agree that they may produce TIFFs in black-and-white format. If an original document contains color necessary to understand the meaning or content of the document, the producing party shall honor reasonable requests for a color image and/or native file of the document. Color images should be produced in single-page JPEG format.

n. **De-Duplication.** ESI shall be e-duplicated globally across all custodians and data sources (both vertically or horizontally). Hard copy documents should not be de-duplicated. All custodians who were in possession of a de-duplicated document must be identified in the CUSTODIANS_ALL metadata field. The parties agree that a document produced from one custodian's file but not produced from another custodian's file as a result of de-duplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit, and/or trial. Exact duplicate documents shall only be identified based on individual document MD5 or SHA-1 hash values only. However, removal of duplicate documents shall be done at the family level (e.g., a standalone document shall not be removed if it has the exact duplicate as part of an Email family.) All Blind Copyees (BCC) recipient names that would have been provided in the BCC metadata field but are now excluded because of de-duplication must be identified in the BCC metadata field (*see* paragraph III). As part of rolling productions of documents or other ESI, the producing party shall provide supplement load files, which should include updated CUSTODIANS_ALL, FILEPATHS_ALL, PRODBEGATTACH (if updated), PRODENDATTACH (if updated), and BCC metadata (if requested).

o.

p. **Embedded Objects.** Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like

attachments to the document in which they were embedded.  Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

      q.    **Compressed Files.**  Compression file types (*e.g.,* .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed and their contents extracted as separate documents.  The container file itself shall not be produced.

      r.    **Redaction.**  If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.  ESI that does not render well (e.g., spreadsheets) or cannot be rendered in mage format (e.g., audio files) can be redacted in native format.  The producing party will provide OCR searchable text for those portions of the document that have not been redacted.

      s.    **Password-Protected Files.**  Password-protected or otherwise encrypted documents must be produced in decrypted format.  The producing party must make an attempt to unlock the document prior to production.  If the producing party is unable to decrypt a document using reasonable standard forensic techniques, the producing party shall retain a listing of such documents.

POTTER ANDERSON & CORROON LLP

By: */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    1313 N. Market Street, 6th Floor
    Wilmington, DE 19801
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Plaintiff Lorem Vascular, Pte. Ltd.*

*Of Counsel*:

Travis J. Anderson
James V. Fazio
Jenna G. Crawford
Sheppard Mullin Richter & Hampton LLP
12275 El Camino Real, Ste. 100
San Diego, CA 92130
(858) 720-8900
tanderson@sheppardmullin.com
jfazio@sheppardmullin.com
jcrawford@sheppardmullin.com

RICHARDS, LAYTON & FINGER, P.A.

By: */s/ Kelly E. Farnan*
    Kelly E. Farnan (#4395)
    Dorronda R. Bordley (#6642)
    One Rodney Square
    920 North King Street
    Wilmington, DE 19801
    (302) 651-7700
    farnan@rls.com
    bordley@rlf.com

*Attorneys for Defendant Plus Therapeutics, Inc., f/k/a Cytori Therapeutics, Inc.*

*Of Counsel*:

John R. Ryan
David F. Kowalski
Latham & Watkins LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400
Jake.Ryan@lw.com
David.Kowalski@lw.com

Nicole Valco
Latham & Watkins LLP
505 Montgomery Street, Suite 200
San Francisco, CA 94111
(415) 391-0600
Nicole.Valco@lw.com

SO ORDERED this 11 day of April, 2022.

/s/ Evan J. Wallach

The Honorable Evan J. Wallach
United States District Judge

**SCHEDULE A**

**PRODUCTION FORMAT PROTOCOL**

I.   **Data Sources and Document Types That Are Not Discoverable and Need Not be Preserved:**

    A.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    B.   On-line access data such as temporary internet files, history, cache, cookies, and the like.

    C.   Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    D.   Back-up data that are substantially duplicative of data that are more accessible elsewhere.

    E.   Voice messages.

    F.   Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

    G.   Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

    H.   Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

    I.   Logs of calls made from mobile devices.

    J.   Server, system or network logs.

K.   Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

L.   Data remaining from systems no longer in use that is unintelligible on the systems in use.

## II.    Requested Metadata Fields for ESI:

| FIELD NAME | TYPE | DESCRIPTION | EXAMPLE / FORMAT |
|---|---|---|---|
| PRODBEGBATES | All | The production Bates number associated with the first page of a document. | ABC00000001 |
| PRODENDBATES | All | The production Bates number associated with last page of a document. | ABC00000003 |
| PRODBEGATTACH | All | The production Bates number associated with the first page of the parent document. | ABC00000001 |
| PRODENDATTACH | All | The production Bates number associated with the last page of the last attachment in the document family. | ABC00000008 |
| PRODVOLID | All | Production volume name. | ABC-VOL-001 |
| PGCOUNT | All | Total number of pages for a document. Slipsheets will indicate one (1) page. | 25 |
| CUSTODIAN | All | The name of the first-processed custodian or data source the files belong to.  For persons, this field should be populated as last name, first name. | Doe, John |
| CUSTODIANS_ALL | All | All custodians who were in possession of a de-duplicated document.  This field should be populated as last name, first name and separated by semicolons for additional Custodians. | Doe, John; Doe, Jane |
| RECORD_TYPE | All | The record typing indicating whether the document is an email, email attachment, email attachment (email) [for attachments that are emails], E-Doc, or E-Doc Attachment, Hard Copy, or similar designations. | Email |
| FILE_EXTENTION | All | The file extension of a document. | docx |
| FILE_NAME | All | The file name of a document. | Document_Name.xls |
| EMAIL_SUBJECT | Email | The subject of an email. | Re: resume |
| DOC_TITLE | E-Files | The extracted document title for a loose file or attachment. | Resume.docx |
| DOC_AUTHOR | E-Files | The author of a document from entered metadata. | John Doe |
| EMAIL_FROM | Email | The email address and name of the person sender in the FROM field of every email metadata. | John Doe <jdoe@acme.com> |
| EMAIL_TO | Email | The email addresses and names of the recipients in the TO field of the email. Multiple email addresses and names should be separated by semicolons. | Jane Smith <jsmith@acme.com |

| EMAIL_CC | Email | The email addresses and names of the recipients in the CC field. Multiple email addresses and names should be separated by semicolons. | Bob Johnson <bjohnson@acme.com>; Sally May <smay@acme.com> |
|---|---|---|---|
| EMAIL_BCC | Email | The email addresses and names of the recipients in the BCC field. Multiple email addresses and names should be separated by semicolons. | John Doe <jdoe@acme.com> |
| DATESENT | Email | The date when an email was sent. | MM/DD/YYYY |
| DATESENT_TIME | Email | The time an email was sent. | HH:MM:SS |
| DATERECEIVED | Email | The date an email was received. | MM/DD/YYYY |
| DATERECEIVED_TIME | Email | The time an email was received. | HH:MM:SS |
| DATELASTMOD | E-Files | The date a document was last modified. | MM/DD/YYYY |
| DATELASTMOD_TIME | E-Files | The time the document was last modified. | HH:MM:SS |
| DATECREATED | E-Files | The date the document was created. | MM/DD/YYYY |
| DATECREATED_TIME | E-Files | The time the document was created. | HH:MM:SS |
| FILESIZE | All | The size of the file in kilobytes (KB) including embedded attachments. | 125256 |
| TIMEZONE | All | The time zone the document was processed in. | PST, CST, EST, etc. |
| SMS RECIPIENTS | Text Messages | Participants on a text message or chat message | |
| DATETIMEREAD | Text Messages | Populated for text message and/or chat data that identifies the date and time values for when the message was read | |
| UNREAD | Text Messages | Yes/No value populated for text message data to identify whether the message had been read | |
| THREAD ID | Text Messages | Conversation threading information populated for text/chat messages that are replies within the same conversation | |
| GROUP IDENTIFIER | Text Messages | Attachment information populated for text message data to identify multimedia attachments sent within a text conversation | |
| FILEPATH | All | The original file path to the source location of the native file in original environment (e.g., local folder, network folder, email folder, or files and/or mail store, etc.). The | \Doe_Jane\My_docs\resume.docx |

-16-

| | | file path should be prepended with the Custodian name. | |
|---|---|---|---|
| MD5 HASH | All | The MD5 "de-duplication key" hash value assigned to a document during processing. | 9CE469B8DFAD1058C3B1E745001158EA |
| SHA-256 HASH | All | The SHA hash value used in digital signatures, message authentication codes, to index data in hash tables, for finger-printing, to detect duplicate data, uniquely identify files, and act as checksums to detect accidental data corruption. | 8857184fe4d9f8e669ed65996a80fee0fe7f67e1c176e180409617a7056608d5 |
| REDACTED | All | Identifies whether a document is redacted. | Yes or Blank |
| CONFIDENTIALITY | All | Identifies a document's confidentiality designation. | Highly Confidential |
| NATIVELINK | All | The relative path to a native copy of a document. The native file should be named per the control number or Bates number, if the document is produced. | \NATIVES\001\ABC00000001.xlsx |
| TEXTLINK | All | The relative path to a text file containing extracted OR OCR text of the document. The Text file should be named per the control number or Bates number, if the document is produced. | \TEXT\001\ABC00000001.txt |